

**SO ORDERED.**

**SIGNED this 22 day of August, 2008.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                          CASE NO.

DAVID L. ALSTON                                                 07-02100-5-ATS

    DEBTOR

ORDER ALLOWING OBJECTION TO CLAIM AND
OBJECTION TO CONFIRMATION

The matters before the court are the objection to confirmation filed by Patricia Alston and the objection to Ms. Alston's claim filed by the debtor. A hearing took place in Raleigh, North Carolina on August 19 and 20, 2008.

David L. Alston filed a petition for relief under chapter 13 of the Bankruptcy Code on September 21, 2007. Ms. Alston is the former spouse of the debtor. On January 31, 2007, the Alstons entered into a separation agreement that required Mr. Alston to pay the following marital debt:

> Husband shall timely and promptly separately pay the sum of Two Hundred Dollars ($200.00) each calendar month, beginning February, 2007, and each succeeding month thereafter, as such payments become due and owing, on the AT&T credit card account in Wife's name, which account is now closed, until the same is entirely and fully paid, including any and all principal, interest, late payment fees, and other charges, if any, which have or hereafter accrue or otherwise are or hereafter become associated with said debt. Wife shall timely and promptly provide Husband with a copy of each monthly statement of such account received by her.

Sep. Agreement, Part II, Section 1.H. On April 8, 2008, Ms. Alston filed a proof of claim based on this provision of the agreement in the amount of $9,387, contending that it is a domestic support obligation entitled to priority pursuant to 11 U.S.C. § 507(a)(1)(A).[1] Mr. Alston objected to the claim, maintaining that the debt is in the nature of a property settlement and should be treated as a general unsecured claim. Mr. Alston's plan does not provide for treatment of Ms. Alston's claim, and Ms. Alston objected to confirmation, contending that her priority claim must be paid in full.

The first question before the court is whether the debt is in the nature of support, and therefore entitled to priority treatment, or is a property settlement that is a general unsecured claim.

---

[1] The term domestic support obligation was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. 109-8, 119 Stat. 23 § 211 (April 20, 2005) .
    "Domestic support obligation" is defined in 11 U.S.C. § 101(14A) as a debt that is –
    (A) owed to or recoverable by–
        (i) a spouse, former spouse . . .
                * * *
    (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, without regard to whether such debt is expressly so designated;
    (C) established or subject to establishment before, on, or after the dateof the order for relief in a case under this title, by reason of applicable provisions of–
        (i) a separation agreement, divorce decree, or property settlement agreement;
                * * *
    and
    (D) not assigned to a nongovernmental entity . . . .
11 U.S.C. § 101(14A).
    A domestic support obligation claim is entitled to a first priority pursuant to § 507(a)(1)(A) and, pursuant to § 1322(a)(2) and § 1325(a)(1), a chapter 13 plan may not be confirmed unless all domestic support obligations are paid in full. Domestic support obligations are nondischargeable in chapter 7 cases pursuant to § 523(a)(5) and § 727(b).
    Although the term domestic support obligation was added to the Bankruptcy Code by BAPCPA, the concept is not new. Prior to BAPCPA, claims for alimony, maintenance or support were entitled a seventh priority, and as priority claims, payment in full was a requirement to confirmation of a chapter 13 plan under § 1325(a)(1) and § 1322(a)(2). Also, claims for alimony, maintenance and support were nondischaregeable in chapter 7 cases prior to BAPCPA pursuant to § 523(a)(5) and § 727(b). In re Sewell, Case No. 07-0777-5-ATS (Bankr. E.D.N.C. Jan.3, 2008).

As this court explained in In re Sewell, Case No. 07-0777-5-ATS (Bankr. E.D.N.C. Jan. 3, 2008), if the claim arises from an agreement between the parties, the determining factor is the intent of the parties at the time the agreement was reached.  Unfortunately, at the time of a separation or divorce agreement, most parties are only interested in how much will be paid and not how the obligation will be characterized.  To determine the parties' intention, the court must consider the terms of the agreement, but labels given to the obligations in the agreement are not controlling and the court must also consider the overall circumstances of the parties.  Tilley v. Jessee, 789 F.2d 1074 (4th Cir. 1986) (decided under the Bankruptcy Act).  Some of the factors that are relevant include:

> the nature of the obligation, whether there are dependent children, the relative earning power of the spouses and an indication that the obligation was an attempt to balance it, the adequacy of the dependent spouse's support without the assumption of the obligation, dependent spouse's receipt of inadequate assets in settlement, status of the obligation upon death or remarriage, timing of payments (lump sum or periodic), the payee (direct vs. indirect), waivers of maintenance, whether the obligation is modifiable, location of the paragraph containing the obligation within the agreement (whether or not it is located within the property distribution section), and the tax treatment of the obligation.

Sawtelle v. Keech (In re Keech), Adv. Pro. No. L-03-00109-8-AP at 6-7 (Bankr. E.D.N.C. Jan. 7, 2004) (citations omitted).  See also Zeitchik v. Zeitchik (In re Zeitchik), 369 B.R. 900, 904 (Bankr. E.D.N.C. 2007).

The Alstons agree about some of the facts behind the agreement.  They agree that the agreement was reached amicably.  They also agree that much of the property settlement, which gave the residence and a time share to Mr. Alston (with the accompanying debts), arose from the fact that Ms. Alston took most of her equity in the marital residence a few years earlier when they obtained an equity line of credit.  In addition, the $500 per month child support figure was one-half of the

daycare expenses for their daughter.[2] Ms. Alston testified that the agreement essentially set forth what she believed she needed from Mr. Alston to maintain a similar standard of living.

With respect to the debt at issue, however, the parties disagree entirely. Ms. Alston contends that the AT&T credit card was in her name because she had better credit than Mr. Alston, but he was an authorized user and he made all of the charges on the card. Mr. Alston contends that he was not an authorized user and that he made none of the charges on the card. The credit card payments are automatically deducted from Ms. Alston's bank account, and the agreement is for Mr. Alston to reimburse her each month. It appears that the primary charge was for a Cadillac Escalade that was titled to both of the Alstons. Though Mr. Alston initially drove the Escalade, at some point Ms. Alston traded the Escalade in for a vehicle to be driven by her, which was in turn traded in for the vehicle she currently drives. So while Mr. Alston initially benefitted from the use of the card, Ms. Alston eventually received the value of the vehicle.

The credit card repayment provision is in the section of the agreement entitled "Property Settlement." Alimony is specifically waived in the agreement, except that Mr. Alston was to maintain health insurance for Ms. Alston for 60 days from the date of the agreement. Ms. Alston testified that had the agreement not required Mr. Alston to pay the credit card debt as well as the $500 per month in child support, she would not have waived her claim to alimony. Mr. Alston contends that Ms. Alston would not have been entitled to alimony, because she had a steady job and made a good living without the need for a contribution from him. Though Mr. Alston historically

---

[2] That figure has since been adjusted to $850 per month, an amount negotiated with Mr. Alston when Ms. Alston sought an order to enforce the child support provision of the agreement.

4

made over $70,000 per year, he lost his job shortly before the separation. Ms. Alston made approximately $47,000 at the time of the separation, but she lost her job in December 2007.

Weighing the various factors and the testimony of the parties, the court finds that the obligation to repay the credit card debt is in the nature of a property settlement, and is not a support obligation. Ms. Alston has the burden of proving that her claim is a domestic support obligation, and she has not met that burden. The obligation is not a domestic support obligation, and the debtor's objection to Ms. Alston's claim is **ALLOWED**. The claim shall be allowed as a general unsecured claim.

However, that does not mean that the debtor's plan is confirmable. A plan may not be confirmed unless it meets all of the requirements of § 1325(a), including the requirement of § 1325(a)(3) that the plan has been proposed in good faith. Determining good faith requires the court to examine the totality of the circumstances, including the treatment of individual creditors such as Ms. Alston. In the circumstances of this case, her chapter 13 plan treatment is not fair.

Although the debtor's obligation to Ms. Alston may not be a domestic support obligation, the debt is one that would be nondischargeable in a chapter 7 case. 11 U.S.C. §§ 727(b); 523(a)(15). The debtor's plan pays nothing to unsecured creditors. In the circumstances of this case, where the debtor is keeping an expensive car, the plan is not fair to Ms. Alston. Ms. Alston's claim need not be paid in full for the plan to be confirmed, but the debtor can and should pay more and Ms. Alston's claim should receive more than is currently provided. Accordingly, the objection to confirmation is **ALLOWED** without prejudice to the debtor's right to resubmit a plan that will meet the standard contemplated by § 1325(a)(3).

**SO ORDERED**.

**END OF DOCUMENT**